**CO–OPERATIVE SHIPPERS,
INC., Plaintiff,**

v.

**The ATCHISON, TOPEKA AND SANTA
FE RAILWAY COMPANY, Defendant.**

No. 84C2359.

United States District Court,
N.D. Illinois, E.D.

Nov. 25, 1985.

---

Richard Billik, Jr., Billik & Billik, Ltd., Chicago, Ill., Ronald N. Cobert, Joseph Michael Roberts, Grove, Jaskiewicz, Gilliam & Cobert, Washington, D.C., for plaintiff.

Dennis A. Kearns, John C. Palmer, Ellen L. Falkof, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

As courts of limited jurisdiction, federal district courts always must decide whether they have subject matter jurisdiction, and thus power, to rule in a case. This case adds a wrinkle to that question. In deciding whether we have jurisdiction, we must decide whether the appellate court has jurisdiction over an appeal which defendant has filed. On July 3, 1985, we granted plaintiff Co-Operative Shippers, Inc.'s ("Co-Op") motion for partial summary judgment. See 613 F.Supp. 788 (N.D.Ill.1985). Defendant ("Santa Fe") had already admitted liability for damaging goods which Co-Op had shipped through Santa Fe but had contested Co-Op's claim for the full actual cost of the damaged freight. We held that Santa Fe was liable for the full cost of the goods but not for court costs, attorney's fees or interest. 613 F.Supp. at 795. We did not determine the actual value of the goods or the amount of damages. Also on July 3, the Court's clerk completed and docketed a form entitled "Judgment in a Civil Case" which repeated the final paragraph of our opinion. See Id. at 795. This

form is the one specified in Fed.R.Civ.P. 58 and, when docketed, starts the running of the 30-day clock for filing of a notice of appeal. Santa Fe filed a notice of appeal on August 1, 1985. One day later, Co-Op filed a "motion for Judgment in a Sum Certain." [1] Santa Fe promptly moved to strike this motion, arguing that the notice of appeal divested this Court of jurisdiction to decide the motion. Co-Op filed a "Motion to Ignore the Notice of Appeal," asserting that the July 3 decision was not final and thus not appealable. The Court of Appeals has held the briefing of the appeal in abeyance pending our resolution of these motions. For the reasons stated below in Part A, we conclude that the July 3 order was not appealable, and that therefore we have jurisdiction to rule on Co-Op's motion for judgment in a sum certain. In Part B, we grant that motion.

### A.

■ Our resolution of the jurisdictional issue involves several straightforward principles of law. We begin with the premise, which Santa Fe does not dispute, that we have jurisdiction to determine our own jurisdiction. Whether we have jurisdiction depends in turn on whether the appellate court has jurisdiction. That is because the filing of a notice appeal usually divests the district court of jurisdiction. See, e.g., Ced's Inc. v. United States EPA, 745 F.2d 1092, 1095 (7th Cir.1984), cert. denied, —— U.S. ——, 105 S.Ct. 2017, 85 L.Ed.2d 299 (1985); United States v. Bastanipour, 697 F.2d 170, 173 (7th Cir.1982), cert. denied, 460 U.S. 1091, 103 S.Ct. 1790, 76 L.Ed.2d 358 (1983). However, this rule does not operate where the order appealed from is non-appealable. Id. Thus, we must decide whether the order appealed from, the July 3 opinion, was appealable.

■ Appellate jurisdiction usually depends on 28 U.S.C. § 1291,[2] which says in relevant part, "[t]he courts of appeal ...

---

1. Co-Op says it mailed this motion two days earlier, on July 31.

2. Santa Fe does not assert any other basis for appellate jurisdiction, such as 28 U.S.C. § 1292

or the "collateral order doctrine" of Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) and its progeny.

shall have jurisdiction of appeals from all *final* decisions of the district courts ..." (emphasis added). An order is "final" (and thus appealable) under § 1291 if it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Local P–171 v. Thompson Farms Co.*, 642 F.2d 1065, 1069 (7th Cir. 1981), *quoting Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1945). It is clear that our July 3 opinion is not final under this definition of finality. The litigation on the merits is not over: the parties are still skirmishing over the proper amount of damages. There is no money judgment to execute.

Our conclusion that the July 3 order is not final is consistent with those cases involving appeals from grants of partial summary judgment. When a court grants "partial" summary judgment on one issue, *see* Fed.R.Civ.P. 56(d), or grants so-called "interlocutory" summary judgment, *see* Fed.R.Civ.P. 56(c) (authorizing summary judgment as to liability only), the order is not "final" under § 1291. *See Liberty Mutual Ins. Co. v. Wetzel*, 424 U.S. 737, 744, 96 S.Ct. 1202, 1206–07, 47 L.Ed.2d 435 (1976); *Wolf v. Banco Nacional De Mexico, S.A.*, 721 F.2d 660, 662 (9th Cir.1983); *Local P–171*, 642 F.2d at 1070; 10 C. Wright, A. Miller & M. Kane, *Federal Practice & Procedure*, § 2715 at 631–34 (1983). This case involved just such a "partial" summary judgment. Liability had been conceded and our July 3 opinion defined the scope of damages available. This was a generic rather than specific decision. We did not decide the actual amount of damages to be awarded. That the parties now dispute the proper amount of damages shows that the damages question is not merely a ministerial or accounting one. This case is a fairly straightforward one and should, if possible, be decided in one appeal. Santa Fe would needlessly have us divide and thereby complicate and delay the

case. Instead of separating the pending damage issue from the one we decided on July 3, and create the likelihood and delay of two appeals, judicial economy dictates that we decide all remaining issues before review by the court of appeals.

In summary, we granted summary judgment in part on July 3, deciding that Co-Op was entitled to the full actual value of its damaged goods, but leaving undecided the issue of what the actual value is. Accordingly, under the principles stated herein, we hold that our July 3 opinion was not a "final" decision and hence was not appealable.[3] It follows from this conclusion that the notice of appeal has not stripped us of jurisdiction, and that the "separate document" filed on July 3 under Rule 58 was improvidently docketed and is void. Having so ruled, we are ready to consider Co-Op's motion for judgment in sum certain.

## B.

The parties agree on several elements of damages: that the value of the damaged goods was $95,103.40, that Co-Op salvaged them for $42,332.16, and that it incurred $17,227.40 to salvage the goods, leaving a net loss of $73,656.46. Co-Op claims, however, that it is entitled as a matter of law to pre-judgment interest on the damages from the date of the accident. Santa Fe disagrees and also contends that the $17,227.40 in salvage costs were excessive and unreasonable. We consider each issue in turn.

### 1. *Interest*

Initially we must dispel any doubts that our July 3 opinion forecloses assessment of pre-judgment interest. In that opinion, we held that Co-Op could not contractually recover interest under Item 37 of ATSF Circular No. TOFC–1. *See* 613 F.Supp. at 795. In so ruling, we did not decide whether some other basis for claim-

---

3. Santa Fe does not argue that appellate jurisdiction could have been triggered by operation of Fed.R.Civ.P. 54(b). Such an argument would have been fruitless since we made no certification under Rule 54(b), and, in any event, that

Rule can be invoked only when multiple claims or parties are involved and when one of those discrete claims is decided finally. *See, e.g., Local P–171*, 642 F.2d at 1069. Such is obviously not the case here.

ing interest exists. Our opinion thus does not foreclose Co-Op's current argument that it is statutorily entitled to pre-judgment interest.

Co-Op is correct that an award of pre-judgment interest as part of the "full actual loss" is proper under both the Carmack Amendment, 49 U.S.C. § 11707, and common law. *See, e.g., George R. Hall, Inc. v. Superior Trucking Co.,* 532 F.Supp. 985, 996–98 (N.D.Ga.1982); *also Lehigh Valley R. Co. v. State of Russia,* 21 F.2d 396, 406 (2d Cir.1927); *Ex Parte No. 263, Rules, Regulations, and Practices of Regulated Carriers with Respect to the Processing of Loss and Damage Claims,* 340 I.C.C. 515, 569–70 (1972). Such an award is discretionary, *see George R. Hall,* 532 F.Supp. at 985, and we see no reason why pre-judgment interest should not be awarded. Such an award will make Co-Op whole. To the extent the "liquidated" nature of the damages is relevant, if at all, *see George R. Hall,* 532 F.Supp. at 997, the actual damages in this case have been largely admitted and certain. We do not see why the few disputes as to the damages argues against interest as part of a make-whole remedy. Santa Fe's remaining arguments about the propriety of pre-judgment interest also lack merit and are rejected.

Having decided that pre-judgment interest is properly part of the "full actual value" of the damaged goods, we must determine *which* interest rate to apply, federal or state. Since federal law has controlled up to this point, including our decision to award pre-judgment interest, we think federal law should determine the interest rate as well. While no federal statute directly prescribes the rate for a case like this, an appropriate federal rate can be discerned from analogous statutes and cases.

Before 1982, the statute which governs *post*-judgment interest for civil money judgments in federal court, 28 U.S.C. § 1961, provided that the forum state's law determined the rate of interest. In 1982, § 1961 was amended to create a uniform federal rate, to be calculated

at a rate equal to the coupon issue yield equivalent (as determined by the Secretary of the Treasury) of the average accepted auction price for the last auction of fifty-two week United States treasury bills settled immediately prior to the date of the judgment.

Although this statute specifically applies only to *post*-judgment interest, we think that so long as pre-judgment interest is proper in this case under federal law, it too should be determined by a federal rate. Congress thought a federal rate appropriate for post-judgment interest, and we see no sensible reason to set a non-federal rate for the pre-judgment situation. Indeed, § 1961 sets a workable market value for the rate that is easily applied and consistent with a make-whole remedy.

In like circumstances, courts have applied a federal rate to calculate an award of pre-judgment interest. In *Western Pacific Fisheries, Inc. v. SS President Grant,* 730 F.2d 1280, 1288–89 (9th Cir.1984), the Court applied the § 1961 rate in a maritime case to an award of pre-judgment interest. *See also Blanton v. Anzalone,* 760 F.2d 989, 992–93 (9th Cir.1985) (using § 1961 to calculate pre-judgment interest in an ERISA case). In *Southern Pacific Transportation Co. v. San Antonio, Texas,* 748 F.2d 266, 275 (5th Cir.1984), the court also applied a federal rate to an award of pre-judgment interest. That was a suit under the Interstate Commerce Act for freight undercharges. The Court noted that an award at the § 1961 rate would be appropriate, but it noted that the Act itself, at 49 U.S.C. § 10707, provides a different rate for cases involving railroad tariffs. That rate is one

equal to the average yield of marketable securities of the United States Government having a duration of 90 days.

49 U.S.C. § 10707(d)(1) & (2). While that Section did not directly apply to that case either, the court reasoned that it, like § 1961, guided it as to federal policy. *Id.* at 275. Faced with a choice between the general statute, 28 U.S.C. § 1961, and a more specific one, 49 U.S.C. § 10707, the

court decided to apply the rate specified in the latter, because it related to the Interstate Commerce area. *Id.* We do the same. While an award under § 1961 would be proper, one under § 10707 is more closely analogous and promotes uniformity in the commerce area. In sum, then, prejudgment interest should be awarded at the § 10707 rate from the date of the derailment until the date of judgment.

### 2. *Storage Charges*

Santa Fe admits that reasonable salvage expenses are allowable as damages, and that Co-Op spent $17,227.41 for salvage, but that part of this amount was unreasonably excessive. We disagree.

Specifically, Santa Fe asserts that some $11,000.00 was too much to pay for storing the damaged goods. However, we think that the deposition testimony to which both parties refer is clear that the expenses paid and efforts of Co-Op were reasonable. The cargo had contained laboratory glassware and other glassware, which, when damaged, had limited acceptability on the market because of the risk of suits on non-sterile goods. Co-Op took many steps to salvage the goods, and the poor market was in large part responsible for the delay that caused the storage charges. Co-Op's efforts yielded over $40,000 in salvage value to the benefit of Santa Fe, and the cost of $17,000 to realize that value was not unreasonable under the circumstances. While the actions of a third-party, VWR Scientific, conceivably hampered the process, it is speculative to conclude that VWR actually delayed the ultimate sale of what was a hard-to-sell freight; moreover, it would be speculative to estimate how much delay there might have been. Considering the totality of circumstances in the record, we find the salvage costs to have been reasonable.

### Conclusion

We have jurisdiction over the case. Co-Op is entitled to judgment in the sum of $73,656.46 plus interest computed from the date of the derailment, at a rate specified above. Co-Op shall serve a draft judgment order on Santa Fe within five days which includes a dollar value for this amount of interest. Santa Fe shall examine and approve this order—without waiving its position on the merits—as to form. Co-Op shall within five days thereafter submit the draft judgment order to the Court. After we receive this order—and assuming it is in proper form—our clerk will docket a new, valid "Rule 58" final judgment form. It is so ordered.