131 F.3d 145
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
CASSAN ENTERPRISES, INC.; CMC Investments, Inc.; Todd
Investment Company, Plaintiffs-Appellees/Cross-Appellants,
v.
DOLLAR SYSTEMS, INC.; Dollar Rent-A-Car Systems, Inc.;
Pentastar Transportation Group, Inc.,
Defendants-Appellants/Cross-Appellees.
 Nos. 96-35605, 96-35634, 96-35905.
 United States Court of Appeals, Ninth Circuit.
 Argued and submitted Oct. 8, 1997.
Filed Nov. 28, 1997.
 
 Appeal from the United States District Court for the Western District of Washington Barbara J. Rothstein, District Judge, Presiding.
 Before WRIGHT, SKOPIL and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant, a car rental franchisor doing business as Dollar Systems, appeals the district court's denial of its renewed motion for judgment as a matter of law. Appellant's motion followed a jury verdict awarding damages to a franchisee for two violations of the Washington State Consumer Protection Act, and the issuance of two injunctions. Appellee franchisee, Cassan, appeals the district court's grant of summary judgment against its Washington State Franchise Investment Protection Act claim. We reverse the jury verdict and vacate the first injunction. We affirm the grant of summary judgment, reverse an award of attorney's fees, and remand the second injunction for reconsideration.
 
 
 3
 We review de novo the district court's denial of a renewed motion for judgment as a matter of law. Del Monte Dunes at Monterey, Ltd. v. City of Monterey, 95 F.3d 1422, 1430 (9th Cir.1996). Judgment as a matter of law is proper if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's conclusion. Id.
 
 I Bid Assistance Claim
 A. Duty of Good Faith and Fair Dealing
 
 4
 The existence of good faith and fair dealing is a question of law. Reid v. State Farm Mut. Auto. Ins., 218 Cal.Rptr. 913, 921 (Cal.Ct.App.1985). Review is de novo.
 
 
 5
 The duty of good faith and fair dealing assures only that parties do not act in bad faith when carrying out discretionary contractual duties; it cannot be extended to create entirely new contractual duties not contemplated by the parties. Racine & Laramie, Ltd. v. California Dep't of Parks & Recreation, 14 Cal.Rptr.2d 335, 339 (Cal.Ct.App.1993). See also, Carma Developers, Inc. v. Marathon Development California, Inc., 826 P.2d 710, 726-27 (Cal.1992).
 
 
 6
 No express provision of the Dollar-Cassan franchise agreement gives Dollar discretionary power, on which a duty of good faith could be based, to reduce their franchise fee or otherwise support an airport concession bid.
 
 
 7
 A California court may find an implied contract provision only if: (1) the implication either arises from the contract's express language or is indispensable to effectuating the parties' intentions; (2) it appears that the implied term was so clearly within the parties' contemplation when they drafted the contract that they did not feel the need to express it; (3) legal necessity justifies the implication; (4) the implication would have been expressed if the need to do so had been called to the parties' attention; and (5) the contract does not already address completely the subject of the implication. Frankel v. Bd. of Dental Examiners, 54 Cal.Rptr.2d 128, 134 (Cal.Ct.App.1996). Appellee did not present evidence at trial to support a finding that any of these five conditions for implying a contract term was satisfied. In any case, the franchise agreement contains waiver and integration clauses. There, neither Dollar's prior waivers of franchise fees with respect to other franchisees nor its oral promises to support Cassan's license bid may amend the franchise agreement. See, e.g., Payne v. McDonald's Corp., 957 F.Supp. 749, 756 (D.Md.1997).
 
 
 8
 The promise by Dollar's president to support Cassan was too indefinite to permit judicial enforcement as a separate contract. "[I]t is plain that where the promisor retains the unlimited right to decide later the nature or extent of his performance the promise is illusory." Beverage Distributors, Inc., v. Olympia Brewing Co., 440 F.2d 21, 30 (9th Cir.1971). See also, Aguilar v. International Longshoreman's Union Local # 10, 966 F.2d 443, 446 (9th Cir.1992) ("a promise that is 'vague, general or of indeterminate application' is not enforceable") (citations omitted).
 
 
 9
 Because it had no legal obligation to provide Cassan with bid assistance, Dollar was entitled to judgment as a matter of law on Cassan's claim under the duty of good faith and fair dealing.
 
 
 10
 B. Washington State Consumer Protection Act Claim
 
 
 11
 Whether an action gives rise to a Washington State Consumer Protection Act ("Washington CPA") violation is reviewable as a question of law. Leingang v. Pierce County Med. Bureau, Inc., 930 P.2d 288, 297 (Wash.1997).
 
 1. Elements of a Washington CPA Claim
 
 12
 The Washington CPA, Wash.Rev.Code 19.86.090, provides a private right of action for a "person who is injured in his or her business or property by a violation of Wash.Rev.Code 19.86.020," which in turn prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." The five elements of a claim are: (1) an unfair or deceptive act or practice (2) occurring in trade or commerce; (3) public interest impact; (4) injury to the plaintiff; (5) and causation. Hangman Ridge Training Stables, Inc. Safeco Title Ins. Co., 719 P.2d 531, 535-39 (Wash.1986).
 
 
 13
 The Washington Supreme Court has held that a plaintiff may establish the first element of a Washington CPA claim either by showing a per se unfair act based on violation of a statute, or by showing that "an act or practice has a capacity to deceive a substantial portion of the public." Saunders v. Lloyd's of London, 779 P.2d 249, 256 (Wash.1989); Hangman Ridge, 719 P.2d at 535. The district court held in a pretrial order that Cassan could not show that Dollar engaged in a per se unfair act. We hold that Dollar's refusal to reduce its franchise fee and support Cassan's airport license bid in the manner and to the extent expected by Cassan did not have the capacity to deceive a substantial portion of the public, and Dollar was entitled to judgment as a matter of law on the Washington CPA claim.
 
 
 14
 The promise to support the bid was made only to the owners of Cassan, in a context unlikely to lead to deception of others. Isolated communications are not likely to deceive a substantial portion of the public unless they are part of a standard form contract or a standard sales representation. Henery v. Robinson, 67 Wash.App. 277, 834 P.2d 1091, 1098 (Wash.Ct.App.1992). Representations by a franchisor to its franchisee are unlikely to have "deceptive capacity affecting the public in general." See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 935 P.2d 628, 635 (Wash.Ct.App.1997).
 
 2. Jury Instructions on CPA Claim
 
 15
 As an initial matter, we note that Dollar sufficiently preserved this issue for review through appropriate objections to the jury instructions at trial. It proposed an instruction, which while improperly labelled "Deceptive Act of Practice," contained the appropriate "capacity to deceive a substantial portion of the public" standard. Dollar later objected to the court's failure to submit the instruction or any other guidance on what a plaintiff must show to establish an "unfair or deceptive act."
 
 
 16
 We review de novo whether the instructions fail to define an element to be proved at trial. Fireman's Fund Ins. Co. v. Alaskan Pride Partnership, 106 F.3d 1465, 1469 (9th Cir.1997).
 
 
 17
 The instructions on the Washington CPA claim were incorrect. The Washington Pattern Instructions on the Washington CPA, WPI 310.08, require an instruction that an "unfair or deceptive act" may be shown by a per se unfair violation of statute or by alleging an act that "has the capacity to deceive a substantial portion of the public." There is a strong probability that the jury would not have found a violation of the Washington CPA had it been properly instructed.
 
 
 18
 The failure of the court to present an instruction to the effect that "[o]nly acts that have the capacity to deceive a substantial portion of the public are actionable," Goodyear Tire, 935 P.2d at 635, was reversible error because the instruction given failed to define an essential element of the claim. See Jordan v. Atchison, Topeka & Santa Fe Ry. Co., 934 F.2d 225, 228-29 (9th Cir.1991)(jury instruction misstating law is reversible error); Little Oil Co. v. Atlantic Richfield Co., 852 F.2d 441, 444 (9th Cir.1988)(jury instructions reviewed for adequate instruction on each element of the case).
 
 II. Advertising Claim
 A. Breach of Contract
 
 19
 The franchise agreement is governed by California law. According to California law, specific provisions of a contract trump general provisions of the contract. See 1 Witkin, Summary of California Law (Contracts) § 695 (9th ed. 1987 & Supp.1996). Appellants could not breach their general responsibility to provide cars on "most favorable terms available" through an exercise of their specific and unambiguous right to control the use of their trademarks in the advertising of its franchisees.
 
 
 20
 We hold that appellants are entitled to judgment as a matter of law. No jury could reasonably find that their exercise of their clearly expressed contractual right to control the advertising of their franchisees in the effort to unify their image through a new trademark advertising policy were a breach of their contract. See, e.g., Bill Call Ford, Inc. v. Ford Motor Co., 48 F.3d 201, 207 (6th Cir.1995).
 
 B. Tortious Interference
 
 21
 In California, "a plaintiff seeking to recover for alleged interference with prospective economic relations has the burden of proving that the defendant's interference was wrongful 'by some measure beyond the fact of the interference itself.' " Della Penna v. Toyota Motor Sales, U.S.A., Inc., 902 P.2d 740, 751 (Cal.1995).[1] Because "[a] doctrine that blurs the analytical line between interference with an existing contract and interference with commercial relations less than contractual is one that invites both uncertainty in conduct and unpredictability of its legal effect," California courts have been admonished to "firmly distinguish" claims of tortious interference with contract and claims of tortious interference with prospective economic advantage. Della Penna, 902 P.2d at 751. The latter requires a showing that the interference was independently wrongful. The former does not. Arntz Contracting Co. v. St. Paul Fire and Marine Ins. Co., 54 Cal.Rptr.2d 888, 895 n. 2 (1996).
 
 
 22
 Here, Cassan cannot allege an enforceable contract for advertising allowances with GM because the consent of Dollar was a condition precedent to such an agreement. Thus, Cassan must show that Dollar wrongfully interfered with its prospective economic advantage. PMC, Inc. v. Saban Entertainment, Inc., 52 Cal.Rptr.2d 877, 891 (1996); Bed, Bath & Beyond of La Jolla, Inc. v. La Jolla Village Square Venture Partners, 60 Cal.Rptr.2d 830, 838-39 (1997). This it cannot do.
 
 
 23
 While the California Supreme Court declined to delineate the meaning of "wrongful interference" in Della Penna, the state court of appeals has repeatedly held that exercise of a contractual right is not wrongful. Arntz Contracting, 54 Cal.Rptr.2d at 896; Rickel v. Schwinn Bicycle, 192 Cal.Rptr. 732, 740 (Cal.Ct.App.1983). Furthermore, even if Dollar's refusal to consent to the advertising agreement was a breach of its franchise agreement with appellee, "a contracting party's unjustified failure or refusal to perform is a breach of contract, and cannot be transmuted into tort liability by claiming that the breach detrimentally affected the promisee's business." Arntz Contracting, 54 Cal.Rptr.2d at 896.
 
 C. Consumer Protection Act
 
 24
 No jury could reasonably find that Dollar's refusal to consent to its advertising agreement with GM had the capacity to deceive a substantial portion of the public, or that there was any public interest in what was essentially a contract dispute between a franchisor and a franchisee. See Goodyear Tire & Rubber Co. v. Whiteman Tire, Inc., 935 P.2d 628, 635 (Wash.Ct.App.1997).
 
 
 25
 Because Cassan failed to establish two of the necessary elements of a Washington CPA action, its advertising claim based on the CPA must be reversed as a matter of law.
 
 III. Injunctions
 
 26
 Both injunctions were based on the jury finding that Dollar violated the Washington CPA in refusing to consent to Cassan's advertising agreement with GM, which we reverse as a matter of law. Because we see no alternative basis for imposition of the first injunction in the record, it must be vacated. We remand to the district court, however, for a determination whether the second injunction may be based on a provision of the Todd-Dollar franchise agreement which gave Cassan's owners the right "to operate a separate leasing company entitled Dollar Leasing ... without any fees or restrictions."
 
 
 27
 Dollar challenges the second injunction, contending that the court lacked subject matter jurisdiction to grant it because the notice of appeal had been filed. They filed their notice of appeal on May 22, 1996, and the court granted the second injunction on July 9, 1996. The notice of appeal was not yet effective when filed, however, because the motion to amend the injunction, which qualified as a Rule 59 motion, was pending. See Fed.R.App.P. 4(a)(4)(C). The notice of appeal had not yet divested the court of jurisdiction. Lewis v. U.S. Postal Serv., 840 F.2d 712, 714 (9th Cir.1988); Cobb v. Miller, 818 F.2d 1227, 1237 (5th Cir.1987).
 
 
 28
 Dollar next argues that the motion to amend the injunction was untimely. Because the motion was filed while a posttrial motion for judgment as a matter of law or for a new trial was pending, it was timely. Fed.R.Civ.P. 4(a)(4)(A). This court reviews for abuse of discretion the court's determination that the motion was timely. United States v. Oregon, 745 F.2d 550, 552 (9th Cir.1984). because there were several motions already pending, the court did not abuse its discretion by entertaining this motion.
 
 IV Cross-Appeals
 A. Summary Judgment on Franchise Claim
 
 29
 As an initial matter, we note that we have subject matter jurisdiction over this appeal. Hilton v. Mumaw, 552 F.2d 588, 603 (9th Cir.1975)(Risk that cross-appellants might become aggrieved upon reversal on direct appeal is sufficient to provide standing for cross-appeal of nonfinal order where final order was entirely favorable to cross-appellants.).
 
 
 30
 In its complaint, Cassan challenged Dollar's denial of bid assistance as a violation of Washington's Franchise Investor Protection Act ("FIPA"), Wash.Rev.Code § 19.100.010. The court dismissed this claim on Dollar's motion for partial summary judgment, concluding that retroactive application of FIPA to the franchise agreement here would violate the Contracts Clause of the United States Constitution, art. I, § 10, cl. 1. We review de novo a grant of summary judgment. Bagdadi v. Nazar, 84 F.3d 1194, 1197 (9th Cir.1996). Because we agree that retroactive application of FIPA to the franchise agreement would violate the Contracts Clause, we affirm the judgment of the district court.
 
 
 31
 Interference with a private agreement implicates the Contracts Clause when: (1) there is a contractual relationship; (2) a change impairs the contract; and (3) the impairment is substantial. General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992). The Clause prohibits such impairments unless legitimate governmental interests justify them. Northwestern Nat'l Life Ins. Co. v. Tahoe Regional Planning Agency, 632 F.2d 104, 106 (9th Cir.1980).
 
 
 32
 The court found FIPA's interference both substantial and insufficiently justified. It relief for these conclusions on Chico's Pizza Franchise, Inc. v. Sisemore, 544 F.Supp. 248, 249-50 (E.D.Wash.1981), aff'd, 685 F.2d 440 (9th Cir.1982). We agree.
 
 
 33
 B. Evidentiary Ruling on Financial Statements
 
 
 34
 Cassan's owners argue that the court erred in ruling that their personal financial statements could be admitted to rebut any claims of financial hardships they might make. As the statements were never admitted and will be irrelevant on remand, this issue is moot and we decline to reach it.
 
 V Attorney's Fees
 
 35
 As the district court's award of attorneys's fees was based on the jury verdicts on the Washington CPA claims that we have reversed, it too is reversed. Each party shall bear its own costs on appeal.
 
 
 36
 REVERSED IN PART, AFFIRMED IN PART, AND REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Della Penna was decided two months after the jury verdict in this case, but several months prior to the order denying defendant's renewed motion for judgment as a matter of law. In diversity cases based on state law claims, we are bound to follow the law of the state as it stands at the time we enter our order of affirmance or reversal. Vanderbark v. Owens-Illinois Co., 311 U.S. 538, 541-42 (1940). We find no prejudice to Cassan in following Della Penna. In holding that its decision was retroactive, the California Supreme Court noted that "litigants and counsel could have foreseen that a change in the rules regulating the pleading and burden of proof requirements in economic relations litigation was in the wind well before the time this case was tried in 1992." Della Penna, 902 P.2d at 750 n. 4. In fact, Dollar objected at trial to the lack of a jury instruction similar to its proposed jury instructions which included "improper" or "wrongful" interference as an element to be proven by Cassan